Good morning, Your Honors, and may it please the Court, my name is Jason Kim. I'm representing the plaintiff appellant here who is suing on her behalf as well as on behalf of a class certified under 23b-2, which certification is not at issue in this appeal. So this case raises what I consider to be a fairly straightforward issue of statutory interpretation, which in turn relies on some predicate facts. Counsel, the one thing I would say about this case is that it is not straightforward. Please proceed. Well, that's an interesting comment. I think we have what the Court may consider an overly simplistic view of how this case should be decided. I think the Board, their argument is a little more complex. They want to bring in a lot of concepts from state law. But to try to get at what I think the fundamental issue is here, I wanted to sort of start toward the end of the briefing an issue that was raised in the back part of the Board's brief, which is this concept that this particular age eligibility provision of the IDEA has been rendered essentially meaningless, because presumably, I don't know for a fact, but I'll accept it as a reasonable premise, you know, every state has its own age eligibility provision. Every state and territory in this country at this point in 2017 probably does offer some form of adult education in the way that we've defined it. And our response to that, and I think it's an interesting window into how to approach this case, is that may be true, but that is by design. In that, I think the structure of that provision of the IDEA, which, you know, it's an old law, it dates back to 1975, is intended to, for lack of a better word, equalize educational opportunities such that, you know, as the federal government and as the states over the years with the deindustrialization, loss of manufacturing jobs, etc., have decided that it's a very important thing now to offer educational opportunities to adults, you know, increase their competitiveness in the global economy. This provision of the IDEA, I think, is intended to, once that occurs, we've decided as a society we want to place resources into adult education. That also has a ratcheting effect on the entitlement to individuals to special education as well, because it's equally important for those individuals to get special. Just to put it simply, the statute doesn't prevent the state of Massachusetts from passing a law that says we're not giving adult education to anybody over 20, period. And if they did that, you wouldn't be here, because the IDEA would not give an enhanced right to people who happen to have disabilities. The statute gives any state the right to say that, doesn't it? So if Rhode Island wanted to pass a new law saying that no one between the ages of 21 and 22 is eligible to participate in any sort of publicly funded educational program, then that would be a state law that is sufficient to divest individuals of their right to special education under federal law. But they have not done that. The fact that they may do that in the future is an interesting theoretical possibility. Maybe this is oversimplifying, but I understand Rhode Island to be saying that they do make what they characterize as adult educational opportunities available to individuals focusing on the age range that's important here between the ages of 21 and 22, and of course beyond that, but we're concerned about that 21 to 22 year period. I got it. Because they do that for the non-disabled population, it's your position that Rhode Island has to make a free, appropriate public education available to disabled students in traditional school settings, the traditional kind of high school that we're talking about. Is that your position? That is not exactly our position. Our position is, or my position is, that to the extent that Rhode Island makes educational opportunities available to students between the ages of 21 to 22, then that triggers the full panoply of rights and entitlements under the IDEA. Now typically that may involve, I don't know the specifics of Rhode Island's special education program, but that may involve keeping someone in a regular high school. It may involve some other type of program. That's all going to be governed by the IEP. So this case is not trying to alter anything about an existing IEP. It's basically continuing the existing IEP for up to an additional year. But doesn't that touch on a concern that Judge Smith expresses at the end of his decision? A lot of these adult education programs take place in homeless shelters and various slightly less formal settings, and to saddle a homeless shelter that gives GED training to non-disabled adults with the IEP responsibilities and all the things that go along with special education struck him as unpractical and a sign that he was wrong. But that's not what was intended by the statute. But you also have to comply with the very burdensome requirements of the IDEA. That's not what we're getting at at all. What we're getting at, and that's why it's a little tricky, because I think we often think of disability law in that particular structure of reasonable accommodation, etc. But this is actually something entirely different. So the fact that the state of Rhode Island offers adult education programs in particular settings does not mean those settings have to be open to disabled students. What it means is that whatever setting the state, through the normal processes, considers to be appropriate for that particular disabled student and had considered before they turned 21 appropriate, they would just be in that same placement just for an additional year or six months. So, for example, if we have a student who was receiving special education services in a high school up until the age of 21, and their birthday happens to fall on a place on a date where the day after their 21st birthday, they receive their notice, you're now ousted from special education, you can't attend this high school anymore. The remedy in this case would be just allow them to continue attending that same program that was already deemed appropriate for them for that additional year. It's by no means to open the doors to every potential adult education program. This is still all governed. There's nothing that changes other than the age eligibility. What actually happens with the substantive content of that individual's education is governed by the exact same IEP process. Your position seems to be that what Rhode Island is providing in these adult education centers, which are not traditional school settings, that is still public education within the meaning of IDEA, and because that is still public education, it's being made available to non-disabled students who are 22 years old. So, Rhode Island is obligated to make those public education opportunities available to disabled students up until they're 22. Is that your position? I guess I quibble a little bit. I haven't got that right yet. I quibble a little bit with those educational opportunities, and this I think relates directly to my answer to Judge Ponser. So, it's not that you would make the specific adult education programs available to disabled students. Rather, it's the fact that the Rhode Island government has chosen to expend public funds and public efforts to make adult education available means that you also have to make some form of continuing education available to disabled students, or students with disabilities, I apologize, that, again, is going to just be a continuation of the services they were already receiving. So, and to put this into further context, we've cited the legislative history of the IDEA. At the time this provision was enacted, it was the case that 46 out of the 50 states either did or intended to provide special education up until the age of 22. So, requiring Rhode Island here to provide education up to the age of 22 is by no means any sort of unprecedented or unusual ask. Let me put a hypothetical to you that I'm probably going to put to your brother as well. I'm a 21-year-old man who does not have a high school degree. I didn't get it because I was in jail. I want help getting a GED or some other type of high school. Between ages 21 and 22, there will be plenty of opportunities for me to get that help if I'm not disabled. If I'm a 21-year-old person and I don't have a high school degree because I had ADHD or manic depression or schizophrenia and I want to help to get my high school degree, Rhode Island is not obliged to provide that under its current scheme. Isn't that the end of the inquiry there? Treating disabled people differently from non-disabled people. Exactly. That is the essence. It's about providing educational opportunities. But, again, as I want to emphasize, and that's the point I think the ERK case made, which is that's what the IDEA is all about, is equalization of opportunity, not excluding disabled students from the educational opportunities that are available to everyone else. And, again, I think that's a very good way to look at the case. That's certainly the way we look at the case. I would just add as the caveat, though, that, again, we're not talking about Title I. We're not talking about just reasonable access to existing programs. It's a different structure. It's that if the state has chosen to provide opportunities to non-disabled adults to complete their education, they have to, within the full context of the IDEA, provide the opportunity, not necessarily equal opportunity, but just some opportunity that complies with the IDEA to continue education up until the age of 22. That bears another concern I have. You seem to be asking us to craft the remedy here. You seem to be asking us to put together a compensatory program for your clients. If we decide that you're right, isn't the remedy to send it back to the trial judge and let the trial judge handle crafting the appropriate remedy? Sure, Your Honor. And I don't think I intended to say in my brief that this court should write some sort of detailed plan. I think there was an issue that was briefed in front of the district court about whether, sort of as an abstract matter, this type of violation was one that gave right to compensatory education. So I think as long as this case is in front of the court, obviously the court can do what it wants to do in that regard. But it seems to me it would be helpful for the district courts in this circuit, because as I understand it, the contours of compensatory relief are a little uncertain in this particular circuit, to at least determine that the facts of this case meet the requirements for an award of compensatory relief if the district court feels that that's appropriate. And I will say that having been involved in the process in Hawaii, which is still ongoing about four years later, it's not an easy process to do that. So our expectation was certainly not that this court is going to fashion any sort of comprehensive decree. I have a consent decree or a remedial order that's 20 years down the road in a similar area. This is not uncommon. Sure. Counsel, this is probably a question that I should, and I will put to APOE, but there are cost concerns that often underlie these kinds of disputes. I wonder how much is really at stake in terms of cost here, because under the knowledge program presently, as I understand it, if you are a disabled student who is, say, 20 years old in August, and you are still eligible to continue to participate to get the benefit of a free, appropriate public education, if you then turn 21 during the course of that school year, at least in some districts, you can continue until the end of the school year. So it seems that there are already a lot of students, disabled students, who in effect will be able to continue to receive their FAPE almost until they're 22 years old. So do you have a sense of how much is really at stake here in this dispute? You know, Your Honor, I really don't. What I would say is as a rough approximation, you know, given the mechanics of the way the termination works, I think it would be reasonable to say it's about six months of additional special education on average would be at stake. You know, if you are fortuitous in terms of where your birthday falls, it may be what's at stake for a particular person is an additional day. Whereas if you're not fortuitous, it might be 364 days. So I just pick a middle point just to get a sense of what's really at stake here. Thank you. Would you remain on the podium, please? Judge Lynch, do you have questions for counsel? No, I don't. All right. Thank you, counsel. Thank you. Good morning. Paul Sullivan on behalf of the Rhode Island Board of Education. To address some of the questions the court asked, first of all, as to what this appeal is really about, my brother counsel indicated he doesn't want to quibble. But at the same time, this is essentially what he's saying is adult education in Rhode Island is the same as public education. It's continuing on the same education services offered in traditional public schools. And that is essentially what the Ninth Circuit decided, and I'm sure the court has looked at that opinion. What Mr. Kim, my brother counsel, did, and he had that case, so at my own risk I referenced that case, but took that Hawaii case law and those Hawaii facts, which he lost in the district court, the Ninth Circuit, as you know, reversed them, and brought to Rhode Island in Chief Judge Smith. Chief Judge Smith looked at the case, looked at the Rhode Island facts are very different in this case. The Ninth Circuit had a Hawaii statute that was enacted in 2010. But, counsel, understanding that the Hawaii facts are very different, why don't the Rhode Island facts mean that the provision of adult education is still within the meaning of the idea of public education? There is state funding, there is some state supervision. It is true that there is more decentralization of the adult education opportunities than is the case in Hawaii. But it seems that there are still a lot of public education in the provision of adult education. Why isn't that what matters for purposes of IDEA compliance? For IDEA compliance, the statute specifically refers to public education. So even though there is some funding, and certainly there's targets, there's a stipulated facts performance target set by the Rhode Island Department of Education to track these community-based organizations as to what they're doing with these funds, it is not the state of Rhode Island that's doing this. And what's being done also is not public education. It's adult education, which includes many different things, some of which is adult basic education, including helping to get a GED. You said some funding. You're fudging, aren't you? It's overwhelmingly publicly funded. The fees are minimal for people who participate. It's not some funding. It's 80%, 90% of the funding for these programs comes from the taxpayers. Sure, you're right. I probably misspoke using some. But at the same time, the fact is, in Hawaii, it was a Department of Education-run school that these children essentially transitioned into. Here, it's a community-based organization. Why does that matter? Why does that render something public private? I mean, it's certainly not private education. It's overwhelmingly funded by the state. And if the community-based organization doesn't do its job, the funding can be pulled. And that decision is made by state educational administrators in Rhode Island. It is, Your Honor, but I guess it goes back to the definition of public education, then. And what is public education? I mean, if the court accepts that what Crossroads, which, as the court's aware, a homeless shelter provides to people getting a GED, is the same as public education under the IDEA, which, as we referenced and as Chief Judge Smith referenced, the IDEA references public education clearly, but also adult education separately when talking about transition services. There's also Title 29 with the Workforce Innovation and Opportunity Act, as the court's aware, that addresses specifically adult education. And even in there, it talks about education at a level that's similar to what Crossroads is doing here, adult education, and not as public education, but different and separate adult education. Counselor, your position seems to be, to some measure, that if the education is not provided in a traditional institutional setting, the kind of high school that we are all familiar with, that if the adult education is not provided in that kind of traditional setting, it does not qualify as public education. Is that your position? No, Your Honor. Well, not completely. I mean, there's a definition of secondary school as well, which the Ninth Circuit relied on, which they found existed in Hawaii. Chief Judge Smith found it does not exist here. That's a nonprofit, an institutional day school, and so forth. That's not here. Additionally, in a significant portion that we haven't discussed, but it is in my brief, is our position that a public education is subject to and meets certain state standards. You cannot have, and this is, I guess, where we digress from the Ninth Circuit, but the Ninth Circuit stripped away any educational standards and called it a free public education. So I put you under the federal code, as well as in state of Rhode Island law. It needs to be provided. I mean, we argue provided by the LEAs, the local educational agencies, or something similar. It could be a secondary school like we talked about. Didn't Judge Nelson in the Ninth Circuit say that education leading to a high school diploma is quintessentially secondary education? Absolutely. And you disagree with that? Well, and that's my brother's position, Your Honor. There's just any education leading to it. I put you, Your Honor, it's not. What we have here is something different. You can have, just like in the Workforce Innovation Opportunity Act in Title 29, adult education encompasses and envisions that there will be some type of education done to raise the level of education for the literates, basic math, things like that. So then people can either go on to a job or take the GED test. Here, the public education in Rhode Island has certain standards. It has a 180-day school year. It has thousands of hours, six hours every day, year after year. Whereas adult education, and again, going back to the point that Courtney made in the beginning, adult education is not that. It's not public education. That's not what... Why isn't it? It's public education. It's just a different type of public education. Why does it lose its characterization as public education? Just because it has some features that are different than the traditional institution-based high school education that we all know about. Your Honor, I guess it comes down to the definition of public education. I come back to it. And as the Court's aware, the Ninth Circuit interpreted it differently than Judge Smith. But public education is not an ambiguous term. I expect the Court, as soon as it reads public education, has a certain thing in mind. If it reads adult education, it has a certain thing in mind. I put to you that it's carried through in the general laws of Rhode Island, same exact meanings, and the federal statutes and codes and regulations, same exact meanings. Public education isn't even defined in the IDA, which leads to this problem, which I put to you, and the Court would obviously interpret however they want, but because it's not an ambiguous term. I agree with you that it's not an ambiguous term. If it's paid for by the taxpayer and not a private facility, and if it's supervised by public administrators, it's public. That's not ambiguous. Why isn't that just a simple answer to the question? Your Honor, it's not supervised by the state of Rhode Island. I believe that is one of the stipulated facts. Well, wait a minute. It's sort of not supervised. It's not supervised in the same way that other educational modes, but if you have a facility that says it's providing support for people seeking a GED and nobody in that program ever gets a GED or 10% of the people in the program get a GED, that program funds are going to be pulled. Isn't that supervision? Well, it's oversight. It's not a direct supervision. I guess I quibble as my brother did with the term supervision. It's performance targets, and you're correct. Then the funding or the grants will be pulled that they get or anticipate. But at the same time, that is not setting the course. It's not instructing them as to what they need to do. It's not direct supervision. It's further removed. I would ask the court to follow and actually also look at what's going on in Hawaii to the extent it differs from Rhode Island in that Hawaii, the 2010 statute that was enacted, it appeared in our appendix at page 148, I believe, 149. Let me interrupt you for just a second because you're getting back to that. I'm reading from the appendix, page 43, which is the deposition of Mr. Abbott. It says, the question is put to him, does RIDE impose standards, performance standards, with respect to these adult education programs? Answer, from your person, yes. That's what he says. And does RIDE ensure that these programs comply with the standards? Answer, we track their compliance with performance expectations, yes. That's what your witness said. Isn't that supervision? Your Honor, I still disagree. It's setting performance targets. I collected the appendix later, but I believe he continued on, because this is a stipulated fact that we had an issue with, that it changed to, my brother counsel had one item in the performance standards, and it was changed to performance targets in the brief. Performance targets versus performance standards. Performance targets does not equal supervision. Performance standards does equal supervision. I still quibble with the supervision issue. Okay. Counsel, I'm trying to do a question that I posed to a parent about the cost implications for Rhode Island of the relief that is sought here. As I indicated, it seems that even under the current law, there are a significant number of disabled students who, because of when their birthday happens to fall, will be continuing to receive a free appropriate public education until they virtually approach the age of 22. So what is at stake for Rhode Island? I gather costs are a concern. What are the cost concerns here? Have you quantified that in any way? We have not quantified the costs, Your Honor, and these costs would not be borne by, perhaps indirectly, they would be by the State of Rhode Island, but they would be borne by the local education agencies, the individual communities, so Providence, who obviously would have a much greater impact than, say, the town of Scituate in Rhode Island. But at the same time, it is a certified class. My brother is seeking compensatory education as well. So it would be significant. It is a major issue for all these local education agencies, because, as I expect, the courts are aware. We don't have cost numbers in here, so I can only reference the class size and the compensatory education. But some of these expenses are significant, and a school district like Providence is a large school district, Woonsocket as well. I also sense there was a concern on the part of Rhode Island that settings that now provide adult education would be required to accommodate disabled students in a way that they simply are not equipped to accommodate them. And you heard opposing counsel say, that's not what they're trying to do here, that individual education placements would be, plans would be fashioned that could avoid those kind of problems. Are you concerned that these non-institutional settings might be required to make accommodations that they're not equipped to make? Yes, we are, Your Honor, because as soon as the court starts saying that adult education is not public education, then it's going to trigger a whole slew of problems, I would expect, or lawsuits, and so forth. And it's not, when the court steps back, I guess this is my time running short, but as the court steps back and looks at this, I'd ask that they don't just focus so closely, like the plaintiff or the appellate wants the court to do, on essentially, as Your Honor might be, but that adult education also encompasses a whole slew of great things. It also encompasses, a great thing as well, increasing literacy rates and basic education, things like that. But because of that now, making them subject to, and saying that's a criminal to public education, causing all sorts of other domino type effects. I'd ask that the court again step back, and perhaps I'm mistaken if the court views it differently, but public education is not, or should not, in the State of Rhode Island's opinion, be a confusing term. When you look at how the federal statutes are set up, how all Rhode Island laws are set up, as Chief Judge Smith observed, there's a whole section dealing with public education, and a slew of statutes referencing specifically public education. And there's a separate one addressing adult education. They're clearly different things. What's going on here, and to my brother's credit, is the Ninth Circuit made a certain decision, which I come back to that, in 2010, Hawaii enacted a law that changed this issue that's before the court here. Rhode Island's had a long time practice and there's no issue here at all. This issue of terminating education or public education when this person turns a certain age is always one thing, one age, and that is the practice. Hawaii, because of a federal court decision, enacts a 2010 law. Immediately, it is challenged. The 2010 law overturns or changes a federal court decision which observed this blatant discrimination going on in this area of the law. So I put to you, those are the facts, as it channels up to the Ninth Circuit and they see what's going on down there. Here in Rhode Island, none of that is going on, Your Honor. We have a public education program, which is great in Rhode Island, and an adult education program, which is also great. And the plaintiff would like to say there's overlap in that, in that adult education is the same as public education. But I come back to Your Honor's first question. It is simply not. The plaintiff here is saying adult education, and despite what he says, I believe what they're looking for is adult education is public education. Therefore, in these public schools, you need to continue on as per the time. I'm going to just run my hypothetical past here that I gave to Mr. Kim. I'm 21. I didn't get my high school degree because I was in jail. I want help getting a high school degree. I'm 21. I didn't get my high school degree because I have ADHD or schizophrenia. I don't get any help. That's the way it works. Yes, Your Honor. I think Judge Smith somewhat addressed that in his opinion as well, in that if you're age 21 and you're in prison, he addresses the adult education act in his, but anyways, if you're 21 and in prison and try to come back and get a public education, they can restrict and keep you out. You won't be let back in. The same thing would happen. Okay. Thank you. Judge Lynch, do you have any questions for counsel? No. Thank you. All right. Thank you. Thank you both.